BOYLE and wife, Respondents, vs. LARZELERE and others, Appellants.

*February 17—March 14, 1944.*

*Vernon J. McHale* of Antigo, for the appellants Walter Larzelere, John Hanousek, and Travelers Insurance Company.

For the appellants Dorothy Simon and Co-operative Insurance Mutual there was a brief by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *Charles F. Smith.*

*James R. Durfee* of Antigo, for the respondents.

Rosenberry, C. J.   Three children of the plaintiffs were almost instantly killed in an automobile accident on October 6, 1942.   Separate actions were commenced to recover for the death of each child.   No question is raised on appeal except as to damages.   Upon the question of damages the court submitted a question as follows: What sum of money will compensate Alfred Boyle and Rose Boyle for damages they have or will sustain because of the death of Marie Boyle: A. For pecuniary damage?   Answer—None.   B. For loss of society and companionship?   Answer—$2,500.

The jury returned the same answer in each of the other cases.

On motions after verdict the trial court said:

"The court is satisfied that a new trial must be granted in these cases on the question of damages only.   It is difficult to understand how the jury arrived at the verdict they did.   It is quite possible the jury concluded that they had given the plaintiffs all they wished to give them when they assessed the damages for loss of society at $2,500 in each case.   However, if that is the conclusion they arrived at, they failed to follow the instructions of the trial court.   Pecuniary damages were proven and it was the duty of the jury, under the instructions of the court, to determine the amount of those damages."

An order was thereafter entered granting a new trial in each case unless the plaintiff should elect to take judgment in the Marie Boyle case for $3,500, in the Norman Boyle case for $4,205, and in the Willis Boyle case for $4,195, with costs and disbursements in each case.   The plaintiffs duly

elected to take judgment for the respective amounts named in each case and judgment was entered accordingly.

It is the contention of the defendants that the trial court was in error in increasing the damages as stated for the reason that there was credible evidence to sustain the finding of the jury. No question of the weight of evidence being involved, it would serve no purpose to set out the evidence which would have supported a finding of the jury of the amount of damages for pecuniary loss finally fixed upon by the trial court. These cases are clearly cases in which a verdict by the jury upon the amount of pecuniary loss of the parents must be sustained if there is credible evidence to sustain it; even though the finding of the jury on the matter of pecuniary damages was against the great weight and clear preponderance of the evidence, that does not warrant the trial court in setting it aside for any purpose other than granting a new trial. There are numerous cases holding that where there is credible evidence to sustain the verdict of the jury, it must stand. We shall therefore refer only to such evidence as tends to support the jury's verdict.

Marie was twenty-one years of age and not in the best of health. She with the mother did the housework for the family. The parents had no legal claim upon her earnings or her services. She of course was at liberty to depart at any time. There were four older children. Howard and Harold, twins, aged twenty-seven years, both married, living away; Floyd unmarried, aged twenty-four years, in the United States army; Lorraine, aged twenty years, a beautician, living in Neenah-Menasha. None of the older children contributed to the support of the parents except Floyd who sent home $25 a month for his mother to keep with the privilege of using it if necessary. The jury might well have inferred that although the family relations were excellent Marie was under no obligation nor was she likely to contribute to the family income for any ascertainable time. The fact that the jury allowed $2,500

for loss of society and companionship indicates that the jury was in no way prejudiced against the plaintiffs. The parents were likely to be deprived of her services at any time. She was only staying at home until "she got married or something."

Willis was eighteen years of age, had finished the eighth grade and thereafter remained at home working for his father at tending bar and doing odd jobs without regular hours. He received no wages but received his board, room, and clothes and $5 per week spending money. He was of draft age and was planning on going into the army. There was nothing to indicate that if he remained at home until he reached the age of twenty-one his contribution to the family would be increased. It might or might not. The jury might find either way. In his testimony the plaintiff, Alfred Boyle, said:

"I figured what work Willis did for me, represented his board, room and clothes and the $5 a week I gave him for spending money."

Norman was sixteen years old. He earned $40 per month, of which his father kept $20 and returned to him approximately $5 per week for spending money. For the $20 of his earnings that his father retained, Norman received his board, room, and clothes, had the use of a car and a good home.

"I figured when Norman gave me the $40 a month, and I gave back $20 a month that that $20 a month I kept of his, would pay for his board and room."

Upon the whole evidence the jury must have concluded that while the relation existing between the parents and children was fine, neither the parents nor the children expected the parents to retain the earnings of the children beyond an amount which would fairly represent the cost of board, room, and clothes. The evidence discloses that the parents were quite willing that the children should practically be on their own from an early age. Upon the whole record it is considered

that the trial court was in error in increasing the damages and allowing plaintiffs to take judgment for the increased amount.

It is further considered that judgment should have been ·entered upon the verdict as rendered.

We have dealt with these cases upon the merits although there is a substantial question as to whether the trial court had a right to set aside the verdict of the jury at the time he did it. Because it will make no difference in the result in this case, we think it is an appropriate time to deal with sec. 270.49 (1), Stats., which provides:

"The trial judge may entertain a motion to be made on his minutes, to set aside a verdict and grant a new trial because of errors in the trial or because the verdict is contrary to law or to the evidence, or for excessive or inadequate damages or in the interest of justice; *but such motion must be made and heard within sixty days after the verdict is rendered, unless the court by order made before its expiration extends such time for cause. . . .*"

The verdict was rendered on June 15, 1943. On the 12th day of August, 1943, two days before the expiration of sixty days, on motion of counsel for the plaintiffs, without notice to defendants' counsel, the court entered an order extending the time for hearing and deciding the motions for a new trial to September 15, 1943. Upon the facts set out in the affidavit of plaintiffs' attorney and upon which the motion was based, it was within the discretion of the trial court to extend the time. The question is, Could he do so by an *ex parte* order? The court relied on *Beck v. Wallmow* (1938), 226 Wis. 652, 657, 277 N. W. 705. The court reversed the order and previous case and said:

"The trial judge may, *on his own motion for cause, enter an order extending the time in which to decide the motion.* In the administration of justice many situations will arise which properly may be considered causes for extending the

time for hearing and deciding motions after verdict. It is clearly within the power of a trial judge to act in such situations. But the trial judge's action should be evidenced by an effective order."

It is apparent that the attention of the court was not directed to sec. 269.45, Stats., which provides:

"The court or a judge may, upon notice and good cause shown by affidavit and upon just terms, extend the time within which any act or proceeding in an action or special proceeding must be taken (except the time for appeal) and may do so after the time has expired."

This statute had its origin in sec. 308, ch. 120, Laws of 1856. It then provided:

"The time within which any proceeding in an action must be had after its commencement, except the time within which an appeal must be taken, may be enlarged upon an affidavit showing grounds therefor, by a judge of the court, or court commissioner, or by a county judge. The affidavit, or a copy thereof, must be served with a copy of the order, or the order may be disregarded."

This section provided for an *ex parte* order to be made by a judge or the court. With slight change in arrangement, the statute continued in force, with an amendment not material here, until January 1, 1934. Throughout its history the affidavit or a copy thereof was required to be served with a copy of the order or the order might be disregarded. By amendment, in effect January 1, 1934, the statute was amended as it now reads.

By the amendment an order enlarging the time may be made by a judge as well as by the court but it must be upon notice and for good cause. Down to 1934, at least it was a common practice to enlarge the time under sec. 270.49, Stats., by an *ex parte* order, oftentimes without stating the cause and in some instances without showing cause. The order author-

ized by sec. 270.49 is certainly an order enlarging the time within which an act may be done. How do the provisions of sec. 269.45 affect the provisions of sec. 270.49? It is to be noted that under the provisions of sec. 270.49, the order extending the time must be made by the court and not by a judge. It is also clear that sec. 269.45 is general in its application. By its terms it applies to all situations. However, sec. 270.49 specifically provides that the order must be made and heard by the court within sixty days after the verdict is rendered. By sec. 269.45, it is provided that the time may be enlarged after the time has expired. In this respect there is a conflict between the two sections. The sections also conflict as to the time of making the order. It is a rule of statutory construction which is applicable to rules of procedure, that where a general statute covering an entire matter is so repugnant to a special statute covering some particular part thereof that effect cannot reasonably be given to both, the latter is to be read as an exception to the former. *State ex rel. deForest v. Hobe* (1905), 124 Wis. 8, 102 N. W. 350. Applying this rule, sec. 269.45 does not authorize a court to extend the time for hearing a motion for a new trial on the judge's minutes after that time has expired, this because of the special provision contained in sec. 270.49 that the order must be made before the expiration of the time.

There is another section to which sec. 269.45, Stats., would not apply. Sec. 269.46 relating to relief from judgments, orders, and stipulations, provides:

"The court may, upon notice and just terms, at any time within one year after notice thereof, relieve a party from a judgment, order, stipulation or other proceeding," etc.

Under this section it has been held that the court is without jurisdiction to vacate a judgment on the statutory grounds more than a year after notice of entry of the judgment. The motion must be made and decided within the year. *Harris v.*

*Golliner* (1940), 235 Wis. 572, 294 N. W. 9. There may be other like situations but they have not been brought to our attention. Reading sec. 270.49, Stats., as an exception to sec. 269.45, sec. 269.45 governs in all other particulars except those noted above. Under the provisions of sec. 269.45 all orders to enlarge the time must be upon notice and good cause shown except in cases where a specific provision is applicable.

The omission to provide in sec. 270.49, Stats., for notice of motion is not significant for the reason that at the time the section was enacted orders to enlarge the time were customarily made *ex parte* and in that respect sec. 270.49 was in accord with sec. 269.45 as it then stood. As that section now stands no court can make an order enlarging the time except upon notice. For a good many years by legislative action, court decision, and court order, a strenuous endeavor has been made to bring about a speedier disposition of cases in the courts of this state. It has been well said that "Procrastination is the thief of time." It not only steals time but it steals the good reputation of courts and subjects them to criticism. Unfortunately it is too often true that justice delayed is justice denied. While of course there are in many cases, as in this case, just grounds for extending and enlarging the time, it is safe to say that in a majority of the cases, good cause does not exist. While the old statute permitted a court or a judge to enlarge the time *ex parte* requiring notice to be given and good cause to be shown tends to reduce the number of instances in which the time is enlarged merely for convenience or as a matter of grace instead of for good cause as the statute requires. We dealt with this phase of the matter in *Banking Comm. v. Flanagan* (1940), 233 Wis. 405, 410, 289 N. W. 647.

Because it appears in this case that there was good cause and that counsel relied upon a comparatively recent decision of this court holding in precise terms that the order could be

made *ex parte,* we shall not vacate the order extending the time as the result is the same either way.

*By the Court.*—The judgment appealed from in each case is reversed, and cause remanded with directions to enter judgment upon the verdict as rendered by the jury.