BRITTON and another, Plaintiffs and Respondents, v. HOYT and another, Defendants and Third-Party Plaintiffs and Appellants: ALLSTATE INSURANCE COMPANY, Third-Party Defendant and Respondent.

*No. 160. Submitted under sec. (Rule) 251.54 April 3, 1974.—*
*Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 274.)

For the appellants the cause was submitted on the brief of *Garvey, O'Brien, Anderson & Kelly* of Eau Claire.

For plaintiffs-respondents the cause was submitted on the brief of *Robert J. Richardson* and *Gavic, Richardson & Skow,* all of Spring Valley.

For the third-party defendant-respondent the cause was submitted on the brief of *Alan S. Robertson* and *Tarrant, Mattka & Robertson,* all of Blair.

HALLOWS, C. J.  The basic issue on this appeal is whether the trial court should have changed the apportionment of causal negligence found by the jury; and if so, whether the apportionment made is sustained by the evidence.

The facts out of which this issue arises are somewhat in dispute.  Britton and Lund spent part of the evening of July 29, 1968, at a dance hall called "Out of Sight" in

Menomonie. They danced and drank beer until closing, about 1 o'clock in the morning, and then proceeded toward Britton's home. After driving approximately two or two and a half miles on a county road, Britton was going west and stopped the car because he was tired. To the east of where Britton stopped was a small hill, which he had just come over, and to the west was a curve in the road to the south. There is dispute as to where between these two points the Britton car was stopped. Britton testified he stopped his car three-tenths of a mile west of the crest of the hill and that there was between .1 and .15 of a mile remaining between the point where he parked his car and the curve in the road to the south. Hoyt testified the car was stopped one-tenth of a mile west of the crest of the hill and that the total distance between the crest of the hill and the curve on the west was three tenths of a mile. These distances were measured by the parties on the odometers of their cars during the trial.

After Britton stopped his car, both he and Lund walked in a westerly direction down the road past the curve and back to the car; they then stood together in front of the car for a few minutes. Britton stood straddling the edge of the roadway and Lund stood on the blacktop portion of the roadway toward the center of the road. At this time two cars came over the hill; neither Britton nor Lund attempted to get out of the roadway. The first car passed the Britton automobile; the second car driven by Hoyt struck the Britton car in the rear, which in turn struck Britton and Lund.

Hoyt had been visiting with her husband and children at her mother's home in rural Knapp and was returning to her mother's home at the time of the accident. As she approached the crest of the hill from the east, she was being followed by another automobile. She ascended the hill going west at approximately 40 to 50 miles per hour; as she passed the crest of the hill, the car behind over-

took and passed her, at which time she saw the taillights of the Britton car ahead which she thought was moving. She watched the passing car for a couple of seconds, turned her attention to the Britton car, realized it was not moving and braked her car. She was unable to stop the car short of the collision.

Besides the dispute of how far the Britton car was beyond the crest of the hill to the west, there is also a question of whether the Britton car was parked completely on the roadway or only partially on the roadway and whether the warning flashers on the Britton car were in use. Britton testified the right wheels of his car were off the roadway approximately one and one-half feet and that the warning flashers were on. Hoyt testified the Britton automobile was entirely on the roadway and that while the taillights were lit, the warning flashers were not in use and she herself turned them on after the accident.

On the date of this accident, sec. 895.045, Stats. 1967,[1] provided that contributory negligence would not be a bar to the plaintiff if such negligence was not as great as the negligence of the person against whom recovery was sought. Consequently, as a result of the jury finding the plaintiff Britton 50 percent causally negligent, he could not recover against Hoyt. As a result of the trial court's changing the apportionment of causal negligence so that Britton was 30 percent negligent, he could recover 70 percent of his damages.

---

[1] "Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

Presently, the statute bars recovery only if the plaintiff's negligence is greater than the negligence attributable to the person against whom recovery is sought. *See* Laws of 1971, ch. 47, effective June 23, 1971; sec. 895.045, Stats.

The traditional rules governing the changing of answers in the jury verdict are well-known. The jury verdict must be sustained if there is any credible evidence which under any reasonable view of the evidence considered in a light most favorable to the verdict meets the burden of proof applicable to that type of case and thus supports the verdict. It is a question of minimum sufficiency. *Bohlman v. American Family Mut. Ins. Co.* (1974), 61 Wis. 2d 718, 214 N. W. 2d 52; *Rodenbeck v. American Mut. Liability Ins. Co.* (1971), 52 Wis. 2d 682, 190 N. W. 2d 917; *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 151 N. W. 2d 706; *Smith v. Atco Co.* (1959), 6 Wis. 2d 371, 94 N. W. 2d 697, 74 A. L. R. 2d 1095. In those relatively few cases where the appellate court or the trial court found the evidence did not support the apportionment made by the jury and the court could find as a matter of law that the negligence of the plaintiff equalled or exceeded that of the defendant, the court so found and denied recovery to the plaintiff. When the court considered the negligence of the plaintiff was relatively less than the defendant and he ought to recover something but the jury's apportionment would not allow it, he was granted a new trial in the interest of justice. It was sometimes said this would be done even if the apportionment of negligence was not wrong but was against the great weight and clear preponderance of the evidence. This procedure, of course, on the part of the trial court has a statutory basis in sec. 270.49, Stats., which provides for a new trial in the event the verdict is against the great weight and clear preponderance of the evidence. This is only part of the control a trial court has and should have over the actions of a jury, whether the question is negligence, causation, damages or apportionment. However, the majority of the court believes that while a trial judge can find as a matter of law the apportionment of causal negligence is against the great weight and clear preponderance of the evidence or that

the causal negligence of one actor is greater than that of another, the trial court cannot conclude that exact percentages can be so determined.

On the facts, we think the court was in error in changing the apportionment because we find the answers of the verdict were sustained by credible evidence. There was credible evidence to support the jury finding that Britton was negligent in the manner in which he parked his car and its position on the roadway and in his failure to use warning flashers and in standing in front of his parked car, straddling the edge of the roadway, as of the time of the collision when he saw Hoyt approaching from behind his car. Two factors prompted the trial judge to conclude the jury apportionment was not supported by the credible evidence: (1) Had Hoyt been exercising a proper lookout, she would have had more than 500 feet from the point at which the taillights of Britton's parked automobile were first visible, as did the driver who preceded Hoyt; and (2) in any event, Hoyt had 15 feet of roadway in which to pass Britton's parked automobile. The first argument goes more to the establishment of negligence than the quantity of its contribution to the accident. The jury had a right to believe Britton's car was parked 500 feet over the hill, on the highway, and the taillights were not flickering so as to give warning the car was parked. In daylight hours one can more easily tell whether a car is parked on the highway or moving; at night, it is almost impossible. Hoyt's attention was, without any fault on her part, diverted by a passing car.

The most that can be said for the reasons of the trial court is that one who has the last clear chance to avoid an accident is the more guilty, but it is doubtful the doctrine of last clear chance was ever the law in Wisconsin. *See Switzer v. Detroit Investment Co.* (1925), 188 Wis. 330, 206 N. W. 407; *Tesch v. Milwaukee Electric Ry. & Light Co.* (1901), 108 Wis. 593, 84 N. W. 823; *Wilmet v. Chicago & N. W. Ry. Co.* (1940), 233 Wis.

335, 289 N. W. 815. That rule was for the determination of proximate cause and contributory negligence; it is only a factor to be considered in the apportionment of causal negligence in this state. We think a person who parks his car on a highway at night over the crest of a hill without the warning signals on his car in operation would be more negligent than one who first sees the car at a distance of 500 feet while traveling at a legal rate of speed. Consequently, we would reinstate the verdict of the jury as to apportionment of negligence. This view of the law obviates any necessity to discuss the question of damages as applied to Britton.

In respect to the damages awarded Lund, the trial court was correct in changing the answers and granting an option to Hoyt and her insurance company. Lund was knocked down by the force of the collision and rendered unconscious. Later she was nervous and almost hysterical. She testified she could not remember anything about the accident excepting that sometime later she realized she was hurt. She was taken to the hospital, and given an aspirin; she fainted. A week following the accident the left side of her face was numb, her lower lip hurt and her face was bruised. On the Monday following the accident she returned to work in Minneapolis. After a week on the job her legs swelled up where she could hardly bend them. She used crutches for three days but her legs hurt for several months. After one and one-half to two months the feeling in her teeth came back. She suffered a chipped lateral incisor tooth and a small laceration on the lip. The dentist who treated her gave her tetanus shots. Six tiny pieces of gravel were removed from her lower lip and there were some minute pieces remaining inside which leaves a small lump in her lower lip. At the trial, she experienced some pain in her knee apparently attributable to joint effusion, fluid in the knee joint, which resulted in a limitation of motion.

The defendants admit the award is low but argue it should be sustained, relying on the fact that *Lopez v.*

*Prestige Casualty Co.* (1971), 53 Wis. 2d 25, 191 N. W. 2d 908, permits the jury to derive an inference as to the amount of pain endured from the time lag in seeking medical treatment. This may be so, but we agree with the trial court that the jury's assessment was inadequate under present-day standards.

*By the Court.*—The judgment is set aside and the cause remanded to enter a judgment consistent with this opinion.

HALLOWS, C. J. *(concurring)*. I think the time has come that the *Powers* [1] rule should be applied to the apportionment of negligence at the trial and appellate level and apportionment of negligence be treated like damages. We formerly said the matter of damages is peculiarly within the discretion of the jury. *See: Spiegel v. Silver Lake Beach Enterprises* (1957), 274 Wis. 439, 450, 80 N. W. 2d 401; *Boyle v. Larzelere* (1944), 245 Wis. 152, 155, 13 N. W. 2d 528; *Nelson v. Duluth St. Ry. Co.* (1928), 197 Wis. 28, 30, 221 N. W. 388; *West v. Day* (1927), 193 Wis. 187, 195, 212 N. W. 648; *Schmidt v. Riess* (1925), 186 Wis. 574, 579, 203 N. W. 362. But it has been accepted for sometime that this court and trial courts can determine a reasonable sum for remittitur and additur purposes when the amount of damages determined by the jury is found to be excessive or inadequate. On the same reasoning, this court and trial courts can determine a reasonable apportionment of causal negligence when the jury's determination is found to be not supported by credible evidence or is against the great weight and clear preponderance of the evidence. There is no more difficulty in finding a percentage of causal negligence than in finding the dollar amount for pain and suffering. Both are judgments to a reasonable degree of what the jury's composite conscience dictates as proper under the circumstances or when the case is tried

[1] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

to the court, what the court believes is proper. Instead of or as an alternative to granting a new trial in the interest of justice, the court in applying the *Powers* rule will avoid retrials and effect a substantial saving of both the parties' and the court's time.

The very number of cases in which this court has been obliged to grant a new trial in the interest of justice because the apportionment could not be found to be supported by the credible evidence operates to recommend a new rule. *See, e.g.,* cases cited in the dissenting opinion in *Vincent v. Pabst Brewing Co.* (1970), 47 Wis. 2d 120, 137, 177 N. W. 2d 513. *See also: Lawver v. Park Falls* (1967), 35 Wis. 2d 308, 151 N. W. 2d 68 (concurring opinion) ; *Pruss v. Strube* (1968), 37 Wis. 2d 539, 546, 155 N. W. 2d 650; *Bourassa v. Gateway Erectors, Inc.* (1972), 54 Wis. 2d 176, 181, n. 1, 194 N. W. 2d 602; and *Gross v. Denow* (1973), 61 Wis. 2d 40, 212 N. W. 2d 2 (dissenting opinion).